

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTT WALLIS, individually and on    )
behalf of MIDWEST BABY GROUP,    )
LLC,    )
    )
    Plaintiffs,    )
    )    Case No. 10 C 7250
    v.    )
    )    Judge John W. Darrah
CARD SERVICES INTERNATIONAL,    )
INC. and THE TRAVELERS    )
INDEMNITY GROUP OF AMERICA,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott Wallis, individually and derivatively on behalf of

Midwest Baby Group, LLC ("Midwest Baby") (collectively, the Plaintiffs") filed a

fourteen-count Amended Complaint against Defendants CSI International, Inc. ("CSI")

and Travelers Indemnity Company of America ("Travelers"),[1] based on an agreement

with CSI to process consumer credit-card transactions and an insurance policy provided

by Travelers. CSI and Travelers have each filed Motions to Dismiss with respect to the

counts alleged against them.[2]

---

[1] Both Defendants are incorrectly named in the Amended Complaint. CSI was named as "Card Services International, Inc.," and Travelers was named as "The Travelers Indemnity Company."

[2] Wallis filed a complaint in November 2010. CSI and Travelers filed motions to dismiss. From February 2011 to May 2011, while these motions were pending, Wallis engaged four attorneys, each of whom subsequently withdrew. Wallis's fifth attorney filed this Amended Complaint. The Court had granted Wallis 90 days to file the Amended Complaint and granted an extension on Wallis's motion for leave to file an

## BACKGROUND

The following facts are drawn from Plantiffs' First Amended Complaint and are accepted as true for purposes of the Motions to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

Wallis is a resident of Illinois. (Am. Comp. ¶ 24.) Midwest Baby is an Illinois limited liability corporation and its principal place of business is in Illinois. (*Id.* ¶ 25.) CSI is a California corporation. (*Id.* ¶ 26.) Travelers is a Connecticut corporation. (*Id.* ¶ 27.) The total amount of controversy between the parties is over seventy-five thousand dollars, inclusive of interests and costs. (*Id.* ¶ 28.) Therefore, this Court has diversity jurisdiction over this suit pursuant to 28 U.S.C. § 1332.

In August 2005, Midwest Baby was formed to purchase and operate franchised baby stores owned by USA Baby, Inc. ("USA Baby") franchises. (*Id.* ¶ 1.) From August

---

amended complaint, which also sought leave to conduct discovery and which was also granted. Eleven months after the original Complaint was filed, Wallis filed the Amended Complaint. The Amended Complaint brought by Wallis in his individual capacity also asserted claims derivatively on behalf of Midwest Baby, alleging that Wallis and others were "members and managers" of Midwest Baby and that Wallis had invested significant time and money in and guaranteed contracts for Midwest Baby. CSI and Travelers claim that the Amended Complaint is not materially different from the original Complaint and have filed the instant Motions to Dismiss. CSI also notes that two years before these proceedings, a bankruptcy petition was filed with the United States Bankruptcy Court for the Northern District of Illinois, No. 08-23564. On or about June 1, 2010, Wallis filed an adversary complaint in the USA Baby bankruptcy against, among others, CSI, which was docketed at 10-1212. CSI claims that Wallis's allegations against CSI in these proceedings are similar to the claims asserted against CSI in the adversary proceeding. The bankruptcy court dismissed the adversary complaint against CSI (and all other defendants). On appeal, the district court reversed the bankruptcy court's dismissal and remanded for further proceedings. On September 20, 2011, the bankruptcy court dismissed the adversary complaint again. Wallis filed an appeal of that decision on November 16, 2011, which is pending in the district court.

2005 to August 2006, Midwest Baby acquired the rights of six USA Baby franchises around Denver, Colorado ("USA Baby Denver"); Cleveland, Ohio ("USA Baby Cleveland"); Toledo, Ohio ("USA Baby Toledo"); Tampa, Florida ("USA Baby Tampa"); Albuquerque, New Mexico ("USA Baby Albuquerque"); and Cuyahoga Falls, Ohio ("USA Baby Cuyahoga"). (*Id.* ¶ 3.) These locations were stocked with various baby products and the total estimated value of this inventory was $1.2 million. (*Id.* ¶ 4.)

*Allegations Relating to Travelers*

Midwest Baby entered into an insurance agreement with Travelers, Policy No. IH680-8299C35A ("Travelers Policy"), which covered the inventory and business operations of all of the above-mentioned locations except for USA Baby Cleveland (*Id.* ¶ 7.)

In November 2006, USA Baby Denver experienced a "catastrophic loss" due to theft, vandalism, employee dishonesty, among other things, which Plaintiffs believe are covered losses under the Travelers Policy. (*Id.* ¶ 6.) On November 7, 2006, Kenny Russell, Midwest Baby's President, notified Travelers of the losses at USA Baby Denver. (*Id.* ¶ 8.)

On March 8, 2007, Wallis faxed the proof of loss documents to Travelers along with a letter from Midwest Baby's attorney, David Tuckey. (*Id.* ¶¶ 13-14.) The amount of the claim was for $1,752,898.00. (*Id.* ¶ 14.) Travelers opened a claim file, Claim No. CFR7008. (*Id.* ¶ 15.)

In December 2006, Midwest Baby closed its USA Baby Tampa location and approximately $300,000 of inventory in Tampa was moved to USA Baby Albuquerque.

3

(*Id.* ¶ 16.) On March 2007, a second theft occurred at USA Baby Denver, which was committed by the store manager. (*Id.* ¶ 17.) In April 2007, Midwest Baby closed its USA Baby Cuyahoga and USA Baby Albuquerque stores. (*Id.* ¶ 18.) The USA Baby Albuquerque store's property was unlawfully taken by a property manager, and the inventory of the store was stolen, which was estimated to have a value of $600,000. (*Id.*)

Plaintiffs allege that due to Travelers' negligence in processing the insurance claim, Plaintiffs were forced to close its six locations, which were valued at an estimated $6 million. (*Id.* ¶ 17.) Plaintiffs concede that the allegedly covered losses only occurred at USA Baby Denver but allege that the conduct of Travelers "set in motion the chain of events that caused the catastrophic loss of all Midwest Baby's location. (*Id.* ¶ 18.)

*Allegations Relating to CSI*

After acquiring these locations, Midwest Baby entered into an agreement with CSI to process consumer credit card transactions, in the amounts of $250,000 to $5 million. (*Id.* ¶ 5.) In November 2006, Midwest Baby contacted CSI with a request for documentation regarding Midwest Baby credit card transactions. (*Id.* ¶ 10.) Midwest Baby noticed that CSI made withdrawals from Midwest Baby's accounts that did not correspond to refunds issued by Midwest Baby. (*Id.* ¶¶ 10-11.) The total amounts withdrawn were estimated at over $100,000. (*Id.* ¶ 11.)

Plaintiffs claim that the six stores closed, in part, because CSI "refused to return the stolen monies taken from Midwest Baby accounts without authorization, which caused a catastrophic cash flow issue which lead[sic] to the inability for Midwest Baby to

4

continue to pay its operating expenses and successfully operate its stores." (*Id.* ¶ 21.)
Plaintiffs allege that Wallis has been harmed personally because he "became responsible
for personal guarantees [for Midwest Baby]" and "suffered a loss of his investment,
salary, future income, and other damages." (*Id.* ¶ 22.)

Wallis brings this lawsuit derivatively on behalf of Midwest Baby "as all other
members have refused to do such after requested[sic] to by Wallis." (*Id.* ¶ 23.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.
*Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal
notice pleading standards, "a plaintiff's complaint need only provide a short and plain
statement of the claim showing that the pleader is entitled to relief, sufficient to provide
the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526
F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a
motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most
favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all
reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint
must allege "enough facts to state a claim to relief that is plausible on its face" to survive
a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)
(*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content
that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare
recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id*. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b). The Rule "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994) (*Vicom*) (internal quotation marks omitted).

## ANALYSIS

### CSI's Motion to Dismiss

Plaintiffs assert the following claims against CSI: (1) violations of the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFA") (Count I); (2) violations of the Uniform Deceptive Trade Practices Act ("UDTPA") (Count II); (3) negligent misrepresentation (Count III); (4) negligent spoliation (Count IV); (5) negligent infliction of emotional distress (Count V); and (6) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, 1964 ("RICO") (Counts XII-XIV). Plaintiffs' RICO claims are brought against CSI and Travelers and will be addressed at the end of this Memorandum Opinion and Order.

### Counts I and II

Plaintiffs have failed to state a claim under the ICFA and UDTPA.

In Count I, Plaintiffs allege that CSI violated the ICFA by withdrawing over $100,000 from Midwest Baby's account and failing to provide proper documentation for these transactions. To bring an ICFA claim, a plaintiff must either allege it was a consumer of the defendant or allege a nexus with Illinois consumers. *See Gold v. Golden G.T., LLC*, No. 05 C 228, 2005 WL 2465815, at *4 (N.D. Ill. Oct. 4, 2005). The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of *merchandise not for resale in the ordinary course of trade or business but for his use or that of a member of his household.*" 815 ILCS 505/1(e) (emphasis added). Plaintiffs have not alleged that they purchased any "merchandise." Moreover, Plaintiffs have not alleged that they purchased merchandise for *their use*; the Amended Complaint demonstrates that Plaintiffs purchased credit-card processing services from CSI for a purely commercial endeavor.

Nor have Plaintiffs alleged a nexus with Illinois consumers. To plead a consumer nexus successfully, a plaintiff must allege that the conduct complained of "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996) (collecting cases). Plaintiffs' Amended Complaint contains no such allegations.

Plaintiffs attached a "Ripoff Report" to their Amended Complaint, which appears to be a printout from an Internet chatroom in which individuals wrote complaints regarding CSI. Relying on this "report," Plaintiffs argue that they have alleged that CSI's conduct is directed to the market. However, this "report" contains general, randomized,

and sometimes incoherent complaints from individuals. Plaintiffs' Amended Complaint does not contain factual content that reasonably supports an inference that *specific* conduct of CSI was directed to the market generally. In fact, Plaintiffs' Amended Complaint contains allegations that demonstrate CSI's purported actions were directed only at Plaintiffs. (*See* Am. Compl. ¶¶ 34-42.) While Plaintiffs allege in a conclusory manner that CSI did not provide records to Midwest Baby and Plaintiffs believed that this was a "standard practice" at CSI (*id.* ¶ 37), Plaintiffs specifically allege that CSI "misrepresented its services to Midwest Baby" and "breached its contract with Midwest Baby." (*Id.* ¶ 41.) Therefore, Plaintiffs have failed to state a claim under the ICFA. CSI's Motion to Dismiss is granted without prejudice as to Count I.

In Count II, Plaintiffs allege that the "deceptive practice" alleged in Count I "resulted in irreparable harm to Midwest Baby, and to the name and reputation of Wallis." (*Id.* ¶ 44.) Plaintiffs have failed to state a claim under the UDTPA. The UDTPA prohibits the disparagement of the "goods, services or business *of another* by false or misleading representation of fact." 815 ILCS 5/102 (emphasis added). The Amended Complaint contains no allegations that CSI made any false or misleading representations regarding Midwest Baby's products. CSI's Motion to Dismiss is granted without prejudice as to Count II.

CSI also argues that Counts I and II are barred by the three-year statute of limitations that applies to ICFA and UDPTA. *See* 815 ILCS 505/10a(e); *McCready v. Ill. Sec. of State*, 888 N.E.2d 702, 709-710 (Ill. App. Ct. 2008). CSI's statute-of-limitations argument is not addressed based on the above ruling.

## Count III

In Count III, Plaintiffs allege a claim of negligent misrepresentation against CSI. Specifically, Plaintiffs allege that CSI owed a duty of care to Midwest Baby relating to its credit-card processing and that Plaintiffs relied on CSI to obtain these records.

In Illinois, a claim for negligent misrepresentation must contain the following elements: (1) a false statement of material fact; (2) the party that stated the fact was careless or negligent in ascertaining the truth of that fact; (3) the party intended to induce the other party to act; (4) the other party acted while relying on the truth of the statement; (5) the other party was damaged by this reliance; and (6) the party that made the statement had a duty to communicate accurate information. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006).

Plaintiffs' claim fails because they have not alleged that CSI made a "false statement of material fact." Plaintiffs allege that CSI owed them a "contractual duty to provide said requested records to Midwest Baby," and CSI "continued to withdraw[] monies from Midwest Baby's accounts." (Resp. at 12.) However, Plaintiffs fail to allege what material statement made by CSI, if any, was false. Therefore, CSI's Motion to Dismiss with respect to Count III is granted without prejudice.

## Count IV

In Count IV, Plaintiffs allege a claim for negligent spoliation. Specifically, Plaintiffs allege that CSI's "misrepresentations and fraudulent and deceptive practices have resulted in spoliation of evidence pertaining to said insurance claims." (Am. Compl. ¶ 63.)

Under Illinois law, a claim of negligent spoliation requires plaintiff to plead "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately caused by the breach, and damages." *Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 161 (Ill. App. Ct. 2000). Plaintiffs' allegation, set forth above, is vague, conclusory, and fails to explain what conduct CSI allegedly engaged in that resulted in the spoliation of evidence.

Furthermore, to plead the element of proximate causation in an action for negligent spoliation of evidence, a plaintiff must allege "sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove* an underlying lawsuit." *Boyd v. Travelers Ins.*, 652 N.E.2d 267, 271 (Ill. 1995) (*Boyd*) (emphasis in original). In the Amended Complaint, Plaintiffs fail to allege that CSI's spoliation of evidence affects their ability to prove claims against CSI in this litigation. Although the import of Plaintiffs' allegations are difficult to discern, Plaintiffs appear to argue that CSI's alleged spoliation of evidence affected their ability to prove their insurance claim against Travelers. Thus, in this respect, Plaintiffs make no reference to this underlying lawsuit. This is insufficient to plead the element of proximate causation. Therefore, CSI's Motion to Dismiss is granted without prejudice as to Count IV.

<u>Count V</u>

In Count V, Plaintiffs bring a claim against CSI for negligent infliction of emotional "duress," which is presumably intended to be "distress." Specifically, Plaintiffs allege that Wallis has "suffered immense emotional pressure as a result of being forced to pursue said claims without the aid of an attorney" and "has been involved in a multitude of different lawsuits that are directly related to the losses identified in this complaint." (Am. Compl. ¶ 71.)

To state a claim for negligent infliction of emotional distress under Illinois law, Plaintiffs must allege: (1) the defendants owed plaintiff a duty; (2) the defendants breached this duty; and (3) this breach proximately caused his injury. *See Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000). Direct victims of negligent infliction of emotional distress are "the persons that the negligent conduct has directly affected; they are the ones that are actually physically injured by the defendant's negligent conduct. To fall in this category, the plaintiff must suffer some contemporaneous physical contact that caused the emotional distress." *Barnes v. Anyanwu*, 391 Fed. App'x 549, 552 (7th Cir. 2010). "[I]n order to recover for negligent infliction of emotional distress under Illinois law, a direct victim must show he suffered a physical injury or impact." *Id.* at 554.

Plaintiffs appear to allege that Wallis is a direct victim of emotional distress. Therefore, Plaintiffs must plead that Wallis suffered physical injury or impact. However, Wallis's alleged injuries – "immense emotional pressure," the loss of business, reputation, etc. – do not constitute "contemporaneous physical contact" or "physical

11

injury or illness" sufficient to state a claim for negligent infliction of emotional distress.

Accordingly, CSI's Motion to Dismiss is granted without prejudice as to Count V.

### *Travelers' Motion to Dismiss*

Many of the claims asserted against Travelers are the same claims brought against CSI. The same reasoning and analysis discussed above as to these claims are applicable to the claims discussed below.

### Count VI Claim by Wallis Individually

As a preliminary issue, Travelers argues that Wallis lacks standing to bring any claims individually against Travelers because the Travelers Policy was issued to Midwest Baby. (Mot. at 3.) Therefore, because all of Plaintiffs' claims arise from Travelers' handling of Midwest Baby's insurance claims, Wallis cannot individually bring these claims since he is not a party to the Travelers' Policy. With respect to Plaintiffs' breach-of-contract claim, this argument is persuasive. Wallis cannot sue based on an insurance contract to which he is not a party, nor has he alleged that the contract was entered into for his direct benefit. *See, e.g., Am. Gen. Fin. Servs.*, No. 02 C 3518, 2005 WL 1211583, at *4 (N.D. Ill. May 19, 2005) (plaintiff who was not a party to the contract "failed to establish [the] most fundamental element of its breach of contract claims" and had no standing to seek declaratory relief under the contract or bring a breach of contract claim); *Olson v. Etheridge*, 686 N.E.2d 563, 566 (Ill. 1997) (holding that under Illinois law, a non-party to

12

a contract may sue for breach of that contract if the contract was entered into for the direct benefit of that non-party.) Therefore, Wallis's contract claim against Travelers is dismissed with prejudice.

### Count VI Claim on Behalf of Midwest Baby

In Count VI, Plaintiffs allege that Travelers breached the Travelers' Policy when it neither approved nor denied Plaintiffs' insurance claim relating to the losses incurred at USA Baby Denver. Travelers argues that Plaintiffs' breach-of-contract claim is time-barred because the Travelers Policy contains a suit-limitation provision, which states: "No one may bring a legal action against us under this Coverage Form unless . . . the action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Mot. at 5.)

Plaintiffs concede that the suit-limitation period has run. However, Plaintiffs argue that the suit-limitation period was tolled during the period that Travelers conducted the investigation of the claim. (Resp. at 13.) 215 ILCS 5/143.1 provides:

> Whenever any policy or contract for insurance, except life, accident and health, fidelity and surety, and ocean marine policies, contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part.

Plaintiffs allege that Midwest Baby reported its claim on November 7, 2006, and sent the proof of loss on March 8, 2007. Travelers did not deny the claim until May 2011.

Therefore, Plaintiffs argue, the suit-limitation provision was tolled during this time period.

In response, Travelers argues that Section 143.1 requires that the proof of loss must be filed in "whatever form is required by the policy." Travelers notes that the Travelers Policy requires that "for loss or damage resulting from 'employee dishonesty' or 'forgery' or alteration, give [Travelers] a *detailed sworn proof of loss* within 120 days after you discover a loss or situation that may result in loss or damage to Covered Property." (Resp. at 8 (citing Am. Compl. at Ex. 1 at 46-47).)[3]

Plaintiffs allege that on March 8, 2007, Wallis faxed the proof of claim document to Travelers "using the forms requested by Travelers in its insurance policy," and on the same day, Midwest Baby's counsel, David Stuckey," sent a letter to Travelers enclosing the same documents. (Am. Compl. ¶¶ 13, 80.) Plaintiffs attached the Stuckey letter, enclosing the proof of loss documents that were sent to Travelers as Exhibit 3 to their Amended Complaint. (*Id.*, Ex. 3.) Based on Plaintiffs' allegations, these appear to be all the documents that were sent to Travelers to initiate the insurance claim.

The Court may consider these documents because "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Concentra*, 496 F.3d at 778. Although Plaintiffs allege that they "us[ed] the forms requested by Travelers" to send the proof of

---

[3] Plaintiffs attached the Travelers Policy to the Amended Complaint. The Court may consider this document because "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 778 (7th Cir. 2007) (*Cocentra*).

loss, the documents in Exhibit 3 directly contradict and therefore trump Plaintiffs'
allegation. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004)
("when a document contradicts a complaint to which it is attached, the document's facts
or allegations trump those in the complaint.").

Travelers points out that Exhibit 3 does not contain a sworn statement and argues
that the suit-limitation period was not tolled. *See Vala v. Pacific Ins. Co., Ltd.*, 695
N.E.2d 581, 583 (Ill. App. Ct. 1998) ("[f]iling of other information with an insurance
company does not start tolling the running of a policy's one-year limitations period if
sworn proof of loss is required by the policy"). In support, Travelers cites
*NDK Crystal, Inc. v. Nipponka Ins. Co. Ltd.*, No. 10 C 1824, 2011 WL 856826, at *1
(N.D. Ill. Mar. 9, 2011) (*NDK Crystal*). In *NDK Crystal*, the court found that a proof of
loss stated in a letter was not a sworn document and thus did not comport with the
insurance company's sworn proof of loss requirement. But *NDK Crystal* was decided in
the context of summary judgment, after the parties had conducted discovery.

Plaintiffs' breach-of-contract claim as pled is barred by the two-year suit-
limitation period. Travelers' Motion to Dismiss is granted with respect to Count VI
without prejudice to Plaintiffs properly pleading that they sent a sworn statement to
Travelers, if they can do so consistent with Federal Rule of Civil Procedure 11.

### Counts VII through XI

Travelers argues that Plaintiffs' remaining non-contractual claims in Counts VII
through XI are preempted by Section 155 of the Illinois Insurance Code ("Section 155").
Under Illinois law, Section 155 is the exclusive method to recover non-contractual

damages for "vexatious and unreasonable" conduct by an insurance company. *See*

*Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996) (*Cramer*). In

*Cramer*, the insured brought a tort claim against his insurer for breach of the duty of good

faith and fair dealing in denying insurance coverage. *See id.* at 898. The court

determined that plaintiff's claim was preempted because Section 155 provided the only

available non-contractual remedy. *See id.* at 904. The court explained:

> In summary, an insurer's conduct may give rise to both a
> breach of contract action and a separate and independent
> tort action. Mere allegations of bad faith or unreasonable
> and vexatious conduct, without more, however, do not
> constitute such a tort. Courts therefore should look beyond
> the legal theory asserted to the conduct forming the basis
> for the claim. In cases where a plaintiff actually alleges
> and proves the elements of a separate tort, a plaintiff may
> bring an independent tort action, such as common law
> fraud, for insurer misconduct.

*Id.*

Here, the question is whether Plaintiffs allege more than Travelers' bad-faith

conduct in these remaining claims.

In Count VII, Plaintiffs bring an ICFA claim against Travelers, alleging that

Travelers "promised to pay said insurance claim" and that "Travelers deceived Midwest

Baby into believing that it would timely pay said amounts owed [and] failed to fulfill its

promises." (Am. Compl. ¶¶ 96, 101.) Plaintiffs' claim consists of nothing more than

allegations regarding Travelers' bad faith. Therefore, Plaintiffs' ICFA claim is

preempted by Section 155. *Cramer* at 904. Furthermore, the Illinois Supreme Court

clearly has stated that "[a] breach of [a] contractual promise, without more, is not

actionable under the Consumer Fraud Act." *See Avery v. State Farm Mut. Auto. Ins. Co.*,

16

835 N.E.2d 801, 844 (Ill. 2005). Plaintiffs premise their ICFA claim and breach-of-contract claim on the same allegations regarding Travelers' failure to pay the insurance claim purportedly due under the Travelers Policy. As such, Plaintiffs' claim is also preempted by its contractual remedy. *See Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 757-58 (Ill. App. Ct. 2004). Accordingly, Travelers' Motion to Dismiss is granted without prejudice with respect to Count VII.

In Count VIII, Plaintiffs bring a UDTPA claim, which they base on the ICFA claim, alleging that "Travelers['] aforementioned deceptive practices have resulted in irreparable harm to the name and reputation of Midwest Baby and Wallis." (Am. Compl. ¶ 111.) Plaintiffs' claim, which mirrors its claim against CSI, fails to state a claim for the reasons set out above in determining the same claim against CSI. Accordingly, Travelers' Motion to Dismiss is granted without prejudice with respect to Count VIII. Moreover, Plaintiffs' Amended Complaint does not clearly state the basis of Plaintiffs' claims; Plaintiffs appear to be merely alleging bad-faith conduct by Travelers.

In Count IX, Plaintiffs bring a claim for negligent misrepresentation, alleging that Travelers represented to Midwest Baby "directly, and through its advertising, that its company would compensate its customers for losses suffered (i.e., covered causes) in its *Trouble Trouble* television ads and other advertisements" and "Travelers misrepresented the claim process, the reliability of their claim process and the speed of their claim process." (Am. Compl. ¶¶ 118, 120-121.) Plaintiffs claim only economic losses as damages for this claim. (*Id.* ¶ 124.)

The economic loss doctrine, as articulated by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982), bars recovery for economic losses resulting from negligent misrepresentation except, among other things, in situations in which a person is in the business of supplying information to guide others in their business transactions. *Trans State Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997). The negligent misrepresentation exception is typically applied to pure information providers. *See, e.g., Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503 (Ill. 1994) (applying exception to accountants).

Plaintiffs' Amended Complaint contains no allegations that Travelers is in the "business of supplying information." Nor does it appear that Plaintiffs could make such an allegation as Travelers is an insurance company that issues insurance policies. *See Mercantile Capital Partners v. Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *8 (N.D. Ill. Feb. 10, 2005) (noting a defendant is generally in the "business of providing information for the guidance of others in business dealings" if it is a "pure information" provider, such as a bank providing credit information to a potential lender, real estate agent, title company, or stock broker). Therefore, Travelers' Motion to Dismiss is granted with prejudice as to Count IX.

In Count X, Plaintiffs bring a claim of negligent spoliation, alleging that "Travelers owed a duty of care to to[*sic*] secure evidence or insure that said evidence was secured, relative to said claim" and "Travelers, via a good faith payment to

Midwest Baby, would have helped secure said evidence, and prevented its loss, or theft, by employees or agents of Midwest Baby." (Am. Compl. ¶¶ 26-27.)

Again, it is unclear what the basis of Plaintiffs' claim is. In short, Plaintiffs appear to be alleging that Travelers' delay in payment is responsible for the spoliation of Midwest Baby's evidence, such as "computer inventory records [and] computer records database of names and orders." (*Id.* ¶ 129.) Although Count X appears to be based on Travelers' alleged bad-faith conduct , it also fails to state a claim. None of the "evidentiary" items allegedly spoiled by Travelers were alleged to be in Travelers' possession. Indeed, the items listed in paragraph 129 of the Amended Complaint were in Plaintiffs' possession. Furthermore, it is not clearly stated how or why Travelers had a duty to Plaintiffs to preserve evidence in Plaintiffs' possession and how Travelers' alleged conduct "caused the plaintiff to be unable to prove an underlying lawsuit." *Boyd*, 652 N.E.2d at 271. Plaintiffs have failed to plead facts that "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. As such, Travelers' Motion to Dismiss is granted without prejudice as to Count X.

In Count XI, Plaintiffs bring a claim for "intentional/negligent infliction of emotional duress [*sic*]," which Plaintiffs presumably mean to be "distress." (Am. Compl. at 18.) Plaintiffs' allegations are based on the alleged bad-faith conduct of Travelers in failing to pay the insurance claim. (*See* Am. Compl. ¶¶ 141, 144.) Therefore, Count XI is preempted by Section 155.

Moreover, Plaintiffs fail to state a claim for negligent infliction of emotional distress for the same reasons set out above as to Plaintiffs' claim against CSI. Plaintiffs

have also failed to state a claim for intentional infliction of emotional distress. Under Illinois law, the elements of a claim for intentional infliction of emotional distress are as follows: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 2003) (citations omitted) (*Harriston*).

In order for conduct to be "extreme and outrageous," the conduct has to go "beyond the bounds of human decency" and "defendant's conduct must be such that recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Lewis v. School Dist. No. 70*, 523 F.3d 730, 747 (7th Cir. 2008) (citations omitted). Plaintiffs have failed to plead such "extreme or outrageous" conduct to satisfy the third element of an intentional infliction of emotional distress claim. Therefore, for these reasons, Travelers' Motion to Dismiss is granted without prejudice as to Count XI.

### RICO Claims against Travelers and CSI

In Counts XII through XIV, Plaintiffs bring RICO claims against Travelers and CSI. Plaintiffs generally allege that CSI, Travelers, and the USA Baby franchises were working in concert as part of a vast conspiracy. Plaintiffs claim that Defendants violated RICO by committing the following predicate acts:

> Interference with interstate commerce, as defined by the Hobbs Act, 18 USC 1951; wire fraud, 18 USC 1343; bank fraud, 18USC 1344, mail fraud, 18 USC 1341, state law violations of consumer fraud and deceptive practices act,

20

> 815 ILCS 505/1 et seq., and state law violations of the
> uniform deceptive trade practices act, 815 ILCS 510/1 et
> seq.

(Am. Compl. ¶ 165.)

Plaintiffs' RICO claims invoke multiple provisions of the RICO statute but fail to

state a claim as to any provision: 18 U.S.C. §§ 1962(a)(b)(c) and 18 U.S.C. § 1964(a)(c).

Section 1962(a) requires plaintiffs to plead "the receipt of income from a pattern of

racketeering activity, and the use of that income in the operation of an enterprise."

*Vicom, Inc.*, 20 F.3d at 778. Section 1962(b) requires plaintiffs to allege that defendants,

"through a pattern of racketeering activity[,] . . . acquire[d] or maintain [ed] . . . any

interest in or control of any enterprise which is engaged in . . . interstate or foreign

commerce." 18 U.S.C. § 1962(b). Under Section 1962(c), plaintiffs must allege "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom*, 20

F.3d at 778.

The "first rule" of pleading any RICO claim is that the "plaintiff must identify the

enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (*Jennings* ). In

support of their claim that an "enterprise" existed, Plaintiffs assert general and boilerplate

allegations that the enterprise had "form, function, leadership and structure" and that

"Defendants were involved in a corrupt enterprise, as defined by 18 USC 1961(4)." (Am.

Compl. ¶¶ 163, 167.) These allegations are insufficient and fatal to Plaintiffs' claims

under Section 1962(a),(b), and (c).

Equally problematic are Plaintiffs' claims under §§ 1962(a) and (b), in which

Plaintiffs have merely restated the elements of the relevant RICO subsection in

boilerplate fashion. Plaintiffs allege that "Defendants obtained proceeds through the Plan and used those proceeds in forming and furthering the enterprise in violation of 18 U.S.C. 1962(a)" and that "Defendants used proceeds obtained through the Plan to control the direction of the enterprise in violation of 18 U.S.C. 1962(b)." (Am. Compl. ¶ 172.) This is insufficient to state a claim under 18 U.S.C. § 1962(a) or (b). *See Rao v. BP Products N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009) ("Rao's complaint merely restates the elements of section 1962(a) in boilerplate fashion and contains no suggestion that money was used or invested in the operation of an enterprise or that he suffered an injury caused by the use or investment of racketeering income. Accordingly, the district court properly dismissed this claim.").

Furthermore, Plaintiffs have failed to meet the heightened pleading requirement that applies to allegations of fraud in a civil RICO claim set forth in Federal Rule of Civil Procedure 9(b). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (*Midwest Grinding*). The Seventh Circuit has also explained in regard to RICO claims that "[a]lthough Rule 9(b) requires that a RICO plaintiff provide only a general outline of the alleged fraud scheme – one sufficient to reasonably notify the defendants of their purported role in the scheme – the complaint must, at minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'" *Midwest Grinding*, 976 F.2d at 1020 (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991)).

Because Plaintiffs' RICO claims have been dismissed, Plaintiffs' claims pursuant to 28 U.S.C. § 1964(a) and (c), in which Plaintiffs seek declaratory and injunctive relief

and treble damages and costs based on the alleged RICO violations, are also dismissed. *See* 18 U.S.C. § 1964(a) (specifying remedies available for RICO violations); 18 U.S.C. § 1964(c) (providing for treble damages, costs, including attorneys' fees).

For the reasons set forth above, Travelers' and CSI's Motions to Dismiss are granted without prejudice as to Counts XII through XIV.

## CONCLUSION

CSI's Motion to Dismiss the First Amended Complaint [68] is granted in its entirety. Travelers' Motion to Dismiss the First Amended Complaint [70] is granted in its entirety. All counts of Plaintiffs' Amended Complaint are dismissed without prejudice, except Wallis's individual claim in Count VII and Count IX in its entirety, which are dismissed with prejudice.

Plaintiffs may file a Second Amended Complaint as to those counts dismissed without prejudice if they can do so within the requirements of Rule 11 and consistent with the holdings in this Memorandum Opinion and Order within 28 days of the date of this Order. This time limitation will be strictly applied.

Date: 5-22-12

JOHN W. DARRAH
United States District Court Judge

23